**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lean Focus Group LLC, | No. CV-22-00684-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Profusion Trade Bulgaria EOOD, et al., | |
| Defendants. | |

Before the Court is Defendants Profusion Trade Bulgaria EOOD ("Profusion"), Mihail Florov, and Simon Florov's (collectively "Bulgarian Defendants") Motion to Dismiss ("Motion") Plaintiff Lean Focus Group, LLC dba Innovation Race Team's ("Innovation") Complaint. (Doc. 14, ("Mot.").) The Court will grant the Motion in part and deny the Motion in part.

**I.      BACKGROUND**

**A.      Factual Background**

Innovation is an Arizona limited liability company with its principal place of business in Arizona. (Doc. 1, Compl. ¶ 1.) Innovation's owner, Jacques Hardian Cochran, began discussing a potential partnership agreement with Simon and Mihail Florov in June 2021 to develop a race team for the 2022 MotoAmerica racing series ("Series"). (*Id.* ¶ 13.) Mr. Cochran ordered two BMW motorcycles from Alpha Racing GmbH & Co. KG ("Alpha Racing"), a German company, for Innovation to use in the Series. (*Id.* ¶¶ 6, 16.) In August 2021, Mr. Cochran and Mihail began discussing the opportunity for Mihail to

race for Innovation in the Series. (*Id.* ¶¶ 17–19.) On October 5, 2021, Innovation and Profusion[1] contracted for Profusion to purchase the BMW motorcycles ("Race Bike")[2] that Innovation had ordered from Alpha Racing "on behalf of Lean Focus Group, LLC" ("Purchase Agreement"). (*Id.* ¶¶ 21–22.) Alpha Racing was to ship the Race Bike directly to Innovation in Arizona. (*Id.* ¶¶ 22, 24–25.) On November 26, 2021, Innovation and Mihail executed a contract for Mihail to race for Innovation in the Series ("Rider Agreement"). (*Id.* ¶ 26; *see* Doc. 17-2, Ex. A, Rider Agreement.) The Rider Agreement contained a forum selection clause that provided "disputes will be decided in District Court of Arizona, Maricopa [C]ounty." (Rider Agreement § 12.)

In December 2021, Simon asked Mr. Cochran to have the Race Bike shipped to Bulgaria or Spain so Mihail could begin "unofficially" practicing for the Series. (Compl. ¶ 30.) On December 9, 2021, Simon asked Alpha Racing to ship the Race Bike to Bulgaria or Spain for "unofficial practice" until January 2022. (*Id.* ¶ 33.) Mr. Cochran and Alpha Racing refused both requests and informed Simon that shipping the Race Bike to Bulgaria or Spain would jeopardize getting the Race Bike to Arizona in time for the Series. (*Id.* ¶¶ 31, 34.)

After Alpha Racing refused Simon's request, Simon notified Mr. Cochran that he believed the COVID-19 pandemic might prevent Mihail from traveling to the United States for the Series. (*Id.* ¶ 36.) Mr. Cochran attempted to negotiate the terms of their prospective partnership to permit Innovation to replace Mihail if he were unable to race, which caused Simon to believe that Mr. Cochran was attempting to oust Mihail. (*Id.* ¶¶ 37–39.) Mr. Cochran terminated partnership negotiations and Bulgarian Defendants then demanded Alpha Racing to ship the Race Bike to Bulgaria, but Alpha Racing refused and suspended any shipment of the Race Bike. (*Id.* ¶¶ 40–44, 51.) In February 2022, Mr. Cochran learned that Mihail had agreed to race for the Spanish race team PinaMoto Racing Services S.L, which conflicted with Mihail's obligation to race for Innovation in the Series under the

---

[1] Profusion is a single-person limited company owned by Simon. (Doc. 1, Compl. ¶ 2.)
[2] The Complaint alleges Profusion would purchase multiple race motorcycles from Alpha Racing but refers only to a singular motorcycle in the remainder of the Complaint. (*See generally* Compl.)

Rider Agreement. (*Id.* ¶¶ 5, 48–50.)

### B.    Procedural Background

Innovation filed the Complaint on April 25, 2022 against Bulgarian Defendants alleging, *inter alia*, breach of contract and tortious interference with Innovation's contracts and business expectancy. (*Id.* ¶¶ 53–83.) Innovation alleges that "[t]his court has personal jurisdiction over Defendants because they have caused events to occur in this district out of which this lawsuit arises." (*Id.* ¶ 7.) On August 31, 2022 Bulgarian Defendants filed the Motion arguing the Court lacks personal jurisdiction over Bulgarian Defendants and alternatively asserting improper venue and forum non conveniens. (*See* Mot. at 1.) Innovation filed its Response on September 30, 2022 and Bulgarian Defendants filed their Reply on October 18, 2022. (Doc. 17, Resp. in Opp'n ("Resp."); Doc. 18, Reply.)

## II.    LEGAL STANDARD & ANALYSIS

### A.    Personal Jurisdiction

The plaintiff has the burden of establishing personal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no statutory method for resolving the question of personal jurisdiction, so "the mode of determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)). Where a court resolves the question of personal jurisdiction by relying on the pleadings and supporting exhibits without conducting an evidentiary hearing, a plaintiff must make only a "prima facie showing of jurisdictional facts" to avoid dismissal. *Id.* In determining whether a plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

//

#### 1.    Consent to Personal Jurisdiction

"[A] forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted). Innovation asserts that all Bulgarian Defendants consented to this Court's jurisdiction by agreeing to the forum selection clause in the Rider Agreement. (*See* Resp. at 1, 5–6, 8; Rider Agreement § 12.) The Court concludes that Mihail is bound by the forum selection clause as a signatory to the Rider Agreement, which Innovation alleges Mihail breached in Count One. (Rider Agreement at 5; *see* Compl. ¶¶ 53–61.) Though Simon and Profusion counter that they are not subject to the forum selection clause because they are not signatories to the Rider Agreement,[3] Simon signed the Rider Agreement as Mihail's legal representative and is therefore bound by the forum selection clause. (*See* Rider Agreement at 5; Reply at 8.). But Innovation has not shown how Profusion is bound by the forum selection clause as a non-signatory to the Rider Agreement.

Further, though Simon and Mihail are signatories to the Rider Agreement, Innovation has not shown that the forum selection clause grants the Court personal jurisdiction over Simon and Mihail for Innovation's tortious interference claims. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Federal law governs the interpretation of forum selection clauses and courts "look for guidance to general principles for interpreting contracts" to determine whether a forum selection clause covers each cause of action. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (citation and internal quotations omitted). The forum selection clause states:

> The validity, enforceability and interpretation of this agreement shall be determined in accordance with the United States of America Law and regulations and Arizona State Laws and regulations. In the event of a dispute arising that the parties themselves cannot resolve, disputes will be decided in District Court of Arizona, Maricopa [C]ounty in the United States of

---

[3] Innovation contends that Bulgarian Defendants cite the forum selection clause to argue only that venue is improper, not that the Court lacks personal jurisdiction. (Resp. at 9.) But the Motion challenges Innovation's sole allegation supporting personal jurisdiction: that Bulgarian Defendants "have caused events to occur in this district out of which this lawsuit arises." (*See* Compl. ¶ 7; Mot. at 4.) And Innovation bears the burden to show that the Court has personal jurisdiction. *Kokkonen*, 511 U.S. at 377.

America.

(Rider Agreement § 12.) Only Innovation's breach of contract claim against Mihail is clearly subject to the forum selection clause. (*See id.*; Compl. ¶¶ 53–61.) By contrast, Innovation's tortious interference with contract claim (Count Three) and tortious interference with business expectancy claim (Count Four) emerge from Simon and Mihail's alleged attempts to convince Alpha Racing to ship the Race Bike to Bulgaria.[4] (*See* Compl. ¶¶ 69–83.) Innovation has not made any showing that the forum selection clause is broad enough to encompass disputes beyond the Rider Agreement. The Court finds that the Rider Agreement's forum selection clause provides the Court with personal jurisdiction over Mihail for the breach of contract claim but not over Innovation's remaining claims against Bulgarian Defendants.[5]

## 2.    Minimum Contacts

Bulgarian Defendants argue that Innovation cannot establish personal jurisdiction over Bulgarian Defendants for Innovation's remaining claims in the absence of the forum selection clause. (Mot. at 2; Reply at 2.) Personal jurisdiction over a nonresident defendant

---

[4] Forum selection clauses can apply to both contractual and tort-based causes of action. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). Forum-selection clauses that cover disputes "arising out of" an agreement apply to those disputes that "relat[e] to the interpretation and performance of the contract itself." *Advanced China Healthcare*, 901 F.3d at 1086 (citation omitted). "By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Id.*

[5] Bulgarian Defendants argue venue is improper under Rule 12(b)(3) and that the forum selection clause is unenforceable because "it would deprive them of a meaningful day in court" and "cause such serious inconvenience" if they are required to litigate in Arizona. (Mot. at 13.) Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Bulgarian Defendants' bare assertion that litigating in Arizona would be inconvenient for Mihail does not overcome the presumption that forum selection clause is valid. *See JPaulJones, L.P. v. Zurich General Ins. Co. (China) Ltd.*, 533 F. Supp. 4d 999, 1008 (D. Or. 2021) (finding the "burden and expense of international litigation" insufficient for plaintiff to show an "insurmountable challenge" to litigating in China). Bulgarian Defendants also contend that the forum selection clause is invalid because the "District Court of Arizona, Maricopa County" does not exist and Mihail did not have notice of where he might be haled into court. (Mot. at 12.) "[A] forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county." *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011). The District Court of Arizona is a proper venue under the forum selection clause because the Sandra Day O'Connor United States Courthouse is in Maricopa County.

requires a plaintiff to show that the forum state's long-arm statute confers jurisdiction and that the exercise of jurisdiction comports with constitutional principles of due process. *Rio Props.*, 284 F.3d at 1019; *see Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute permits the exercise of personal jurisdiction to the same extent as the U.S. Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997). Due process requires that a non-resident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, under which a defendant's contacts with the state allow the state to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out the defendant's contacts with the forum state giving rise to the litigation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011). Innovation does not allege that the Court has general jurisdiction, so the Court will analyze only whether it has specific jurisdiction over Bulgarian Defendants.

The Ninth Circuit employs a three-part test to evaluate whether a non-resident defendant has sufficient minimum contacts with the forum state for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). All three requirements must be met for jurisdiction to comport with federal due process. *Omeluk*, 52 F.3d at 269. If a plaintiff meets the first two requirements, the burden shifts to the defendant to set forth a compelling case that exercising jurisdiction would be unreasonable. *Mavrix Photo, Inc. v.*

*Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). This test ensures a defendant will not be haled into a jurisdiction based only on "defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The Ninth Circuit uses the "purposeful availment" test for claims arising from contract, and the "purposeful direction" test for claims arising from tort. *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Innovation asserts both contract and tort claims, so both tests apply.

### i.      Purposeful Availment

Innovation alleges breach of contract against Profusion (Count Two). (Compl. ¶¶ 62–68.) Bulgarian Defendants assert that Innovation has failed to show how Profusion has availed itself of Arizona based solely on the sale of the Race Bike. (Mot. at 6.) "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (internal quotation and citation omitted). Personal jurisdiction is proper where a defendant's conduct creates a "substantial connection" with the forum state or "continuing relationship[] and obligations" with a resident of the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–75 (1985). "In determining whether such contacts exist, [courts] consider 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 479). This assessment involves a "qualitative evaluation" of the defendant's contact with the forum state. *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

Profusion contracted with Innovation to purchase the Race Bike on behalf of Innovation and have it shipped to Arizona. (Compl. ¶¶ 21–22.) A contract with an out-of-state defendant does not alone establish minimum contacts with the plaintiff's home forum. *Burger King*, 471 U.S. at 478. Innovation does not explain how Profusion created a substantial connection with Arizona or ongoing obligations to Innovation under the

Purchase Agreement.[6] *See Boschetto*, 539 F.3d at 1017 (noting that neither plaintiff's complaint nor his affidavit in opposition to dismissal point to any continuing commitments assumed by the defendants from "the lone transaction for the sale of one item."). Innovation has failed to show that Profusion purposefully availed itself of doing business in Arizona.

## ii.    Purposeful Direction

Innovation alleges that Bulgarian Defendants are liable for tortious interference with contract (Count Three) and tortious interference with business expectancy (Count Four). (Compl. ¶¶ 69–83.) Bulgarian Defendants contend that they do not have sufficient minimum contacts with Arizona for this Court to hear either cause of action, as any alleged interference with the sale and shipment of the Racing Bike was directed at Alpha Racing in Germany and not at Arizona. (Mot. at 6.) The Ninth Circuit employs the "effects" test in examining purposeful direction of a defendant's activities towards a forum state. *Schwarzenegger*, 374 F.3d at 805. A defendant purposefully directs its activities toward the forum state when it has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). When applying this test, courts "look to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Picot*, 780 F.3d at 1214 (quoting *Walden*, 571 U.S. at 285). Innovation has failed to show that Bulgarian Defendants purposefully directed their acts at Arizona.

The "intentional act" prong requires only "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Innovation alleges that Bulgarian Defendants "made multiple individual telephone demands and written demands through legal counsel

---

[6] Innovation argues only that the Court has personal jurisdiction "because Defendants . . . consummate[d] a transaction by signing an exclusive racing contract with a resident of the Arizona forum that established an ongoing relationship to race in American motocross as a member of Plaintiff's team." (Resp. at 8.) Innovation then asserts that "here the minimum contacts analysis is unwarranted" because the forum selection clause in the Rider Agreement provides the court with personal jurisdiction. (*Id.* at 9.) But as discussed above, Innovation does not explain how the Rider Agreement establishes personal jurisdiction over Profusion and Simon for causes of action relating to the Purchase Agreement.

to Alpha Racing in an attempt to coerce Alpha Racing" into shipping the Race Bike to Bulgaria instead of Arizona.[7] (Compl. ¶¶ 41–43, 72.)

A court's analysis of the "express aim" prong "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. For intentional interference claims, the question is whether the defendant "expressly aimed such interference" at the forum state. *Picot*, 780 F.3d at 1214. Bulgarian Defendants' alleged attempts to coerce Alpha Racing into shipping the Race Bike to Bulgaria were "expressly aimed" at Alpha Racing in Germany, not at Arizona. *See id.* at 1215 (finding no express aiming where Michigan defendant's interference occurred "without entering California, contacting any person in California, or otherwise reaching out to California."); *Verbick v. Movement Tech. Co., Inc.*, No. 20-CV-611-TWR(DEB), 2021 WL 6804098, at *8 (S.D. Cal. Mar. 25, 2021) (Delaware defendant did not expressly aim alleged interference with contract at California by convincing Washington defendant to breach its contract with California plaintiff). Innovation makes no argument to the contrary and has failed to show that Bulgarian Defendants interfered with Innovation's contracts or business expectancy by "expressly aiming" their actions at Arizona. Because Innovation has failed to show that Bulgarian Defendants purposefully availed themselves of conducting business in Arizona or purposefully directed their actions at Arizona, the Court grants the Motion as to Simon and Profusion, and Innovation's remaining claims against Mihail.

//

## B.    Forum Non Conveniens

Bulgarian Defendants alternatively argue the Court should dismiss the case under the doctrine of forum non conveniens. (Mot. at 14.) Bulgarian Defendants' argument applies only to Innovation's breach of contract claim against Mihail because the Court does not have personal jurisdiction for the remaining claims. Federal courts have discretion to dismiss a case on the basis forum non conveniens "when an alternative forum has

---

[7] Innovation alleges more broadly that Bulgarian Defendants breached their contracts with Innovation, which interfered with Innovation's existing contracts and expected sponsorship arrangements. (Compl. ¶¶ 71, 74–75, 78–79, 82–83.) Any alleged breach of Bulgarian Defendants' contracts was a consequence of their intentional acts.

jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up). Defendants invoking the doctrine of forum non conveniens "bear[] a heavy burden in opposing the plaintiff's chosen forum." *Id.* at 430. In order to prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate that an adequate alternative forum exists and the balance of private and public interest factors weigh in favor of dismissal. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). When parties agree to a forum selection clause, the agreed-upon forum should be "given controlling weight in all but the most exceptional cases." *In re Orange, S.A.*, 818 F.3d 956, 961 (9th Cir. 2016) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013)). Bulgarian Defendants have not shown that there are exceptional circumstances with regard to Mihail to overcome the forum selection clause.

## III.     CONCLUSION

Because Innovation has not established that this Court has personal jurisdiction over Defendants Simon and Profusion, the Court dismisses them from this action. The Court retains personal jurisdiction over Innovation's breach of contract claim against Mihail and will not dismiss the case for forum non conveniens because Bulgarian Defendants have not shown exceptional circumstances to overcome the forum selection clause.

**IT IS ORDERED** granting Bulgarian Defendants' Motion to Dismiss as to Defendant Simon Florov, Defendant Profusion Trade Bulgaria EOOD, and Counts Three and Four against Defendant Mihail Florov. (Doc. 14).

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** denying Bulgarian Defendants' Motion to Dismiss the Complaint as to Count One against Defendant Mihail Florov (Doc. 14).

Dated this 5th day of January, 2023.

_____
Susan R. Bolton
United States District Judge